Approved: ______________________
MICHAEL D. MAIMIN
Assistant United States Attorney

Before: THE HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

23 MJ 1350

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>JIHAD SMITH,<br>a/k/a "Milly Woo," and<br>BRANDON GARCIA,<br><br>Defendants. | **COMPLAINT**<br><br>Violation of 18 U.S.C. § 922(g)(1)<br><br>COUNTY OF OFFENSE: WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

Karma Smith, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and charges as follows:

## COUNT ONE

1. On or about February 20, 2023, in the Southern District of New York, JIHAD SMITH, a/k/a "Milly Woo," and BRANDON GARCIA, the defendants, knowing they had each previously been convicted in a court of crimes punishable by imprisonment for a term exceeding one year, knowingly did possess ammunition, to wit, 13 rounds of 9-millimeter ammunition, which were in and affecting interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1)).

The bases for my knowledge and the foregoing charges are, in part, as follows:

2. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with other law-enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. This complaint relates to a Polymer80 9-millimeter "ghost gun" with which JIHAD SMITH, a/k/a "Milly Woo," threatened another driver on the road, and extended magazine containing 13 9-millimeter rounds (as well as two additional 9-millimeter rounds) that SMITH and the passenger in his car, BRANDON GARCIA, attempted to discard when chased by the police, during which chase SMITH and GARCIA crashed into a barrier just off the Saw Mill River Parkway.

4. I have reviewed police reports and body-camera footage and spoken with law enforcement officers and a victim and learned the following:

a. In the morning on or about February 20, 2023, the victim was driving northbound on the Saw Mill River Parkway in or near Yonkers, New York, when two cars—a white car and a dark-colored Chrysler 300 with tinted windows—merged onto the Parkway. At a traffic light, the white car was in front of the victim's car, and the Chrysler was on the right side of the victim's car. The victim spat out the victim's window; the driver of the Chrysler—wearing a gray hoodie and with a thin goatee, later identified as JIHAD SMITH, a/k/a "Milly Woo," the defendant—looked at the victim and spat. The victim and SMITH exchanged words, and then drove when the light turned green, stopping at a second traffic light. At that traffic light, the Chrysler pulled up on the left side of the victim's car; SMITH brandished what appeared to be a semi-automatic handgun with a flashing green light/laser, and threatened the victim, saying the victim knew what SMITH would do to the victim. The person in the passenger seat of the Chrysler—wearing a colorful, possibly yellow, durag and later identified as BRANDON GARCIA, the defendant—who was closer to the victim, smiled at the victim.

b. The victim drove away and called 911, who remained on the phone with the victim. The Chrysler stayed behind the victim's car; at one point, because of construction, the Parkway narrowed. When the construction ended, the Chrysler pulled in front of the victim's car, but the police approached and tried to pull the Chrysler over.

c. The Chrysler then sped up and drove away, chased by multiple marked and unmarked law enforcement vehicles which had their lights and sirens on. The Chrysler took an exit off the Parkway and crashed into a guard rail on the driver's side of the car, coming to a stop.

d. Law enforcement officers pulled SMITH and GARCIA out of the Chrysler—which had tinted windows—and arrested them. SMITH was wearing a gray hoodie and had a thin goatee; GARCIA was wearing an gold-colored durag. At the direction of the 911 operator, the victim pulled over nearby to speak with law enforcement; the victim later confirmed to me that the victim saw the man in the

gray hoodie—later identified as SMITH—get arrested, and that that was the man who brandished the firearm at the victim and the man who was driving the Chrysler.

e. On the ground directly under the passenger's side of the Chrysler—from which law enforcement officers pulled GARCIA—law enforcement found an extended magazine loaded with 13 rounds of ammunition, as well as a loose round of ammunition. When law enforcement officers pulled GARCIA from the Chrysler, they noticed an additional loose round of ammunition rolling near him, which they recovered.

f. I have reviewed body-camera videos from the arrests of SMITH and GARCIA and saw, on the Chrysler that had crashed into the guard rail, that GARCIA's window was open, and SMITH's window was closed.

g. After law enforcement officers arrested SMITH and GARCIA, a law enforcement officer got into the Chrysler to place it on a tow truck to be impounded. When he did so, he saw a green flashing light coming from the back seat behind the passenger's seat; he looked to the flashing light and saw the firearm pictured below, which was later recovered, at which point law enforcement learned that it was an unloaded Polymer80 9-millimeter "ghost gun" with a green laser:




5. I have spoken with a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF"), who explained that, in his training and experience, this type of Polymer80[1] 9-millimeter gun is formally termed a "privately made

[1] The "P80" stamp on the grip of the gun indicates that the firearm frame was originally marketed and distributed by Polymer80, Inc., which is a corporation headquartered in Nevada that explains, on its website, that it "designs and develops innovative firearms and after-market accessories that provide ways for our customer to participate in the build process, while expressing their right to bear arms." https://www.polymer80.com/about-us.

firearm" or "PMF,"[2] and is often known on the streets as a "ghost gun," and is commonly assembled from an unfinished frame or receiver, a complete kit and/or parts acquired through the Internet, private party sellers, or brick and mortar stores, or utilizing 3D printing technology. Because they are not originally sold as firearms and are not generally assembled by Federal firearms licensees ("FFLs"), such PMFs do not have manufacturer or importer markings, or a recordkeeping trail.[3]

6. I have reviewed images from the Instagram account belonging to JIHAD SMITH, a/k/a "Milly Woo," the defendant,[4] and learned that, on or about November

---

[2] A PMF is "[a] firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer, and without a serial number or other identifying markings placed by a licensed manufacturer at the time the firearm was produced. The term shall not include a firearm identified and registered in the National Firearms Registration and Transfer Record pursuant to chapter 53, title 26, United States Code, or any firearm made before October 22, 1968 (unless remanufactured after that date)." 27 C.F.R. § 478.11.

[3] Federal regulations require licensed manufacturers or importers to mark firearms with the model and caliber of the firearm; the name of the manufacturer or importer; the city and state of the place of business of the licensed manufacturer for a domestically made firearm; and, in the case of an imported firearm, the country of origin, and the city and state of the place of business of the licensed importer. 27 C.F.R. § 478.92. Further, FFLs must maintain records of the importation, production, receipt, sale, or other disposition of firearms at their places of business as prescribed by regulation. 18 U.S.C. § 923(g)(1)(A). FFLs must complete an ATF Form 4473, Firearms Transaction Record, prior to the transfer of each firearm to a non-licensee, and maintain a record of each firearm manufactured or imported, as well as acquisitions and dispositions. 27 C.F.R. §§ 478.121–478.125. These records include, among other requirements, the firearm manufacturer or importer information. Unfinished firearms frames and receivers have commonly been distributed as parts, rather than firearms, by both licensed and unlicensed dealers, allowing them to skirt these requirements. On April 26, 2022, ATF published a Final Rule further defining the term "frame or receiver" to include unfinished frames and receivers which may be readily assembled, completed, restored, or converted into a frame or receiver. 87 Fed. Reg. 24652; 27 C.F.R. § 478.12(c). The Final Rule became effective on August 24, 2022. On December 27, 2022, ATF issued an Open Letter to all Federal Firearms Licensees in which ATF determined that a partially complete, disassembled, or nonfunctional frame of a Polymer80 semi-automatic striker-fired pistol may be readily converted and is therefore classified as a frame and a firearm under federal law. www.atf.gov/rules-and-regulations/docs/open-letter/all-ffls-dec2022-open-letter-impact-final-rule-2021-05f/download.

[4] The photo is from an Instagram account under the username "millywoo_" [one underscore]. I have spoken with a gang investigator who explained that SMITH uses

23, 2022, SMITH posted the following photograph to his account, showing a person who, though masked, appears consistent with SMITH—and who a gang investigator familiar with SMITH confirmed to be SMITH—holding what appears to be a semi-automatic handgun with something—consistent with a laser—mounted beneath the barrel and loaded with an extended magazine:




7. A law enforcement officer told me that he checked, and he was able to load the extended magazine into the ghost gun.

---

the street name "Milly Woo." According to another law enforcement officer, on or about December 2, 2022, shortly after the "millywoo_" Instagram account appeared to have been deactivated, a photo appeared on the new "millywoo__" [two underscores] Instagram account with a photograph that I and a gang investigator who knows SMITH believe to be SMITH stating: "millywoo__ IG [Instagram] deleted my other Page … Share Me!!!" and including a photograph of SMITH. Additionally, the "millywoo__" Instagram page includes photographs of SMITH.

8. I have spoken with a Special Agent with the ATF who has reviewed photographs of the 15 rounds of 9-millimeter ammunition recovered in this case. He told me that, based on his training and experience, he was able to identify 13 of the 15 9-millimeter rounds, and determined that they were not manufactured in New York State.[5]

9. I have reviewed criminal history records pertaining to JIHAD SMITH, a/k/a "Milly Woo," and BRANDON GARCIA, the defendants, and learned the following:

a. On or about September 6, 2016, SMITH was convicted in Westchester County Court of robbery in the second degree: displays what appears to be a firearm, in violation of N.Y. PENAL LAW § 160.10(2)(B), a Class C Felony, and was sentenced, on or about May 9, 2017, to 30 months' to seven years' imprisonment. Moreover, on or about May 15, 2017, SMITH was convicted in Westchester County Court of assault in the second degree: injure a person while confined in a correctional facility, in violation of N.Y. PENAL LAW § 120.05(7), a Class D Felony, and was sentenced, on or about June 27, 2017, to three years' imprisonment, to be followed by three years' post-release supervision. SMITH was released to parole on or about April 23, 2020, and was discharged from parole on or about July 1, 2022.

b. On or about February 14, 2017, GARCIA was convicted in New York County Supreme Court of: (i) attempted murder: intentional, in violation of N.Y. PENAL LAW § 125.25(1), a Class B Felony; and (ii) criminal possession of a weapon in the second degree: loaded firearm, in violation of N.Y. PENAL LAW § 265.03(1)(B), a Class C Felony. On or about May 2, 2017, GARCIA was sentenced to seven years' imprisonment, to be followed by five years' post-release supervision. Moreover, on or about June 26, 2018, GARCIA was convicted in New York County Supreme Court of conspiracy in the second degree: intent to perform a class A felony, in violation of N.Y. PENAL LAW § 105.15, a Class B Felony, and was sentenced, on or about July 17, 2018, to one to three years' imprisonment. On or about July 29, 2021, GARCIA was released to parole, which he is still serving.

---

[5] The Special Agent is currently researching the place of manufacture of the two remaining rounds, each of which were found in the extended magazine.

WHEREFORE, deponent respectfully requests that JIHAD SMITH, a/k/a "Milly Woo," and BRANDON GARCIA, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

Karma Smith
Special Agent
Federal Bureau of Investigation

Sworn to before me this
21st day of February, 2023

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK